# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH B. ADAMS,** | : | **CIVIL ACTION NO. 1:06-CV-2154** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| **COL. JEFFREY MILLER,** | : | |
| **LINDA BONNEY, MJR. ENSEL,** | : | |
| **LT. SELGRAPH, SGT. SHANON, and** | : | |
| **CPL. CHARLES MOREY,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Joseph B. Adams ("Adams") brings this action alleging that

defendants discriminated against him on the basis of disability and gender during

his tenure as a police cadet at the Pennsylvania State Police Academy.  Adams

contends that his efforts to obtain employment with the Pennsylvania State Police

were foreclosed due to a breathing disability that precluded him from passing the

physical fitness examination imposed on all cadets.  Adams also claims that he was

the victim of unconstitutional gender discrimination.  Defendants' motion for

summary judgment (Doc. 33) asserts that the disability claims must fail because

Adams is not disabled under the Americans with Disabilities Act and that he lacks

prima facie evidence of gender discrimination.  For the reasons that follow,

defendants' motion will be granted, and this matter will be closed.

## I.    <u>Statement of Facts</u>[1]

In late 1990, Adams was diagnosed with a tumor in his chest that restricted venous blood flow to his heart.  (Doc. 34 ¶ 1; Doc. 42-2 ¶ 1; Doc. 42, Ex. D at 12.)[2] Physicians removed a portion of the tumor surgically, and Adams underwent a regimen of postoperative radiation and chemotherapy treatments to treat the

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party.  <u>See</u> <u>infra</u> Part II.

[2] The parties have not assigned letters or numbers to their respective exhibits. For ease of reference, the court will identify the exhibits as follows:

**Defendants' Exhibits**
(attached to Docket Entry No. 33)

| <u>Exhibit Letter</u> | <u>Description</u> |
|---|---|
| A | Deposition of Joseph B. Adams |
| B | Deposition of Darby G. Hand |
| C | Deposition of Erin Snyder |
| D | Expert Report Prepared by John E. Smith, Jr. |
| E | Declaration and Expert Report of Paul F. Simonelli |
| F | Declaration of Linda M. Bonney and Attached Human Resources Records |
| G | Declaration of Rodney A. Manning and Attached Police Academy Records |

**Plaintiff's Exhibits**
(attached to Docket Entry No. 42)

| <u>Exhibit Letter</u> | <u>Description</u> |
|---|---|
| A | Declaration of Joseph B. Adams |
| B | Deposition of Darby G. Hand |
| C | Deposition of Charles S. Mory |
| D | Deposition of Michael S. Marrone |
| E | Deposition of Michael F. Selgrath |

Defense exhibits E, F, and G consist of affidavits to which numerous unpaginated materials are attached.  The court will cite portions of these exhibits using the pages numbers assigned by the Electronic Case Filing system.

remaining growth.  (Doc. 34 ¶ 2; Doc. 34, Ex. A at 13; Doc. 42-2 ¶ 2.)  The tumor was eradicated in March 1991, and the cancer has never recurred.  (Doc. 34 ¶ 3; Doc. 34, Ex. A at 13-14; Doc. 42-2 ¶ 3.)  Adams's treatment resulted in fibrosis—or permanent scarring—in his right lung.  (Doc. 33, Ex. E at 2.)  Dr. Darby G. Hand ("Dr. Hand"), who treated Adams at the Police Academy, testified that this scarring caused a condition known as reactive airway disease, which produces asthma-like symptoms including shortness of breath, tightness in the chest, and wheezing.  (Doc. 34 ¶ 3; Doc. 34, Ex. A at 13; Doc. 34, Ex. B at 6-7; Doc. 42-2 ¶ 3.)  According to Adams, the condition renders it "harder for me to breathe . . . with extended exertion[ and] physical activity.  I breathe harder than the next person.  Walking can also affect it if [I am] walking up hills."  (Doc. 33, Ex. A at 24.)  However, he explained that he has no difficulty mounting a flight of stairs, (id.), and he performs cardiovascular exercise two to three times per week, (id. at 30).  These workouts typically consist of running on a treadmill or outdoors for a period of fifteen minutes.  (Id. at 28-29.)  He also rides a stationary bike, (id. at 29), can bench presses 165 pounds for ten repetitions, (id. at 30), and occasionally plays catch with his nine-year-old nephew, (id. at 37).

### A.    Adams's Breathing Condition and Its Effect on His Police Training

In autumn 2003, defendant the Pennsylvania State Police ("PSP") accepted Adams as a cadet, and he matriculated at the Police Academy on November 2, 2003.  (Doc. 34 ¶¶ 4-5; Doc. 42-2 ¶¶ 4-5.)  PSP imposes minimum physical fitness standards on all police cadets.  (Doc. 34 ¶¶ 6-7; Doc. 42-2 ¶¶ 6-7.)  To graduate from the

Academy, a cadet must sprint three hundred meters in fifty-six seconds and perform thirty push-ups, thirty-seven sit-ups, and an eighteen-inch vertical jump. (Doc. 34 ¶ 8; Doc. 42-2 ¶ 8.) The cadet must also run 1.5 miles in 14:05 minutes or less. (Doc. 34 ¶ 8; Doc. 42-2 ¶ 8.) Cadets who cannot complete these requirements do not graduate and are dismissed from service. (Doc. 34 ¶ 12; Doc. 42-2 ¶ 12.)

Adams successfully completed all physical fitness requirements except the 1.5 mile run. (Doc. 34 ¶ 10; Doc. 42-2 ¶ 10.) Despite attempting the run on eight separate occasions over a six-month period, his best time was 15:05. (Doc. 34 ¶ 11; Doc. 33, Ex. A at attach. 1; Doc. 42-2 ¶ 11.) Police Academy instructors required him to participate in five training sessions per week, two more than cadets who attained passing times. (Doc. 33, Ex. A at 11.)

Adams asserts that these additional sessions aggravated his breathing condition and that he would have completed the 1.5 mile run had he been permitted to rest for one or two days before performing the physical fitness exam. (Id. at 34.) He spoke with defendant Corporal Charles S. Mory ("Mory"), who supervised the physical training program, "a couple of times" about the possibility of receiving a rest period. (Id. at 35.) Mory refused his requests. (Id.) Adams also spoke with two of Mory's subordinates; however, they lacked authority to approve rest periods for him. (Id. at 36.)

Adams further contends that Police Academy staff possessed erroneous information about his condition. Defendant Michael Selgrath ("Selgrath"), the commander of the basic training program, erroneously believed that surgeons had

4

removed one of Adams's lungs during his cancer treatment. (Doc. 42, Ex. E at 5, 12.) Selgrath relayed this inaccurate information to defendant Robert Einsel ("Einsel"). (Id. at 17.) It is unclear what role, if any, Einsel played in the Police Academy's training program, and Selgrath testified that he could not recall any conversation with Einsel or Adams that addressed the feasibility of providing additional rest periods before performing the 1.5 mile run. (Id.)

Adams's treating physicians testified that a less intensive training schedule would not have increased his ability to complete the run. Dr. Hand stated that Adams's reactive airway disease impaired his maximum respiratory capacity and that prescription medication was the only means of increasing his breathing capabilities. (Doc. 33, Ex. B at 14-15.) Dr. Hand prescribed an albuterol inhaler and a steroid injection for Adams; however, these measures produced only marginal gains in respiratory capacity. (Doc. 33, Ex. A at 17-19; Doc. 33, Ex. E at 3-4.) Dr. Michael S. Marrone, who originally diagnosed Adams's tumor but has not treated him since the late 1990s, likewise testified that "all the training in the world and all the methods in the world, short of carrying an oxygen tank on your back, would not . . . help" boost Adams's lung capacity. (Doc. 42, Ex. D at 14.) Defendants' expert witness concurred with these opinions and explained that scar tissue in Adams's lung had decreased his maximum respiratory capacity and that "more rest before Mr. Adams attempted the 1.5 mile run test would not have

allowed him to achieve an acceptable or appreciably changed result."[3]  (Doc. 33, Ex. E at 5.)  Adams has not proffered any expert testimony that additional rest periods would have enabled him to gain the respiratory capacity necessary to complete the test within the allotted time.

### B.    Adams's Allegations of Gender-Based Differential Treatment

Adams advances a claim of gender discrimination based upon defendants' treatment of Collette Rarrick ("Rarrick"), a female cadet whom Adams alleges failed to complete the vertical jump component of the physical fitness exam.  Cadets receive two opportunities to complete the jump each time they are tested.  (Doc. 33, Ex. C at 9.)  Adams, who was present during Rarrick's exam, testified that he witnessed Rarrick fail the jump requirement on both attempts.  (Doc. 33, Ex. A at 19, 21.)  Police Academy records contradict Adams's recollection and indicate that

---

[3]Adams urges the court to disregard defendants' expert reports because they did not disclose them prior to filing their motion for summary judgment.  He asserts that the "failure to disclose these expert witnesses is a violation of Fed. R. Civ. P. 26(a)(1) and (2)" and impaired his ability to take discovery from the experts. (Doc. 42 at 6.)  Rule 26 of the Federal Rules of Civil Procedure requires parties to identify experts and disclose their reports "at the times and in the sequence that the court orders."  FED. R. CIV. P. 26(a)(2)(C).  In this case, the court ordered defendants to disclose their expert reports no later than October 2, 2008.  (Doc. 30.)  Adams avowedly received notice of defendants' expert testimony with the filing of the instant motion on September 6, 2008, approximately four weeks in advance of the expert disclosure deadline.  (Doc. 33, Ex. E; Doc. 42 at 6.)  If Adams lacked sufficient time to take discovery from defendant's experts, he could have sought an extension of the discovery period, as he did on at least four occasions during the course of this litigation.  (See Docs. 17, 19, 23, 27.)  He did not do so.  Defendants properly disclosed the expert reports, and the court will consider them for purposes of the pending motion.

> Cadet [Rarrick] passed event by just barely brushing the blade set at 18″ on 2nd jump[,] causing it to vibrate. She had not contacted frame. Cadet insisted verbally [that] she had touched blade as well. A third attempt was made at the same mark to remove any doubt but she failed by at least 1″.

(Doc. 33, Ex. C attach. 2.) Academy instructors apparently concluded that Rarrick had successfully completed the jump on her second attempt, and the assessment sheet for her final examination indicates that she passed the requirement. (Id.)

### C.    Procedural History

Adams filed the instant suit in November 2006, advancing claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12107, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963. Adams contends that defendants discriminated against him on the basis of disability and gender and refused to accommodate his disability by allowing him to rest for several days prior to the physical fitness exam. He also alleges that the exam unnecessarily excludes individuals with disabilities from working as state troopers because it does not represent the minimum qualifications necessary to perform the duties imposed upon a law enforcement officer. Defendants move for summary judgment on the grounds that Adams is not disabled under the ADA and that the fitness exam is an appropriate mechanism for evaluating cadets' fitness for duty. They also assert that he lacks prima facie evidence of gender discrimination. The parties have fully briefed these issues, which are now ripe for disposition.

## II. <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. <u>See</u> Fed. R. Civ. P. 56(c). It places the burden on the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III. <u>Discussion</u>

Adams advances claims against all defendants for disability discrimination on the grounds that they failed to accommodate his disability and required cadets to pass an improper physical fitness exam. He also alleges that defendants discriminated against him on the basis of his gender. The court will address these claims *seriatim*.

### A. <u>ADA Claims</u>

Adams alleges that defendants engaged in two distinct forms of disability discrimination. First, he contends that they discriminated against him by refusing

to accommodate his breathing disorder by affording him an adequate rest period in advance of the physical fitness exam. Second, he argues that the physical fitness exam discriminates against individuals with disabilities because it tends to exclude them from state trooper positions.[4]

Section 102(a) of the ADA, 42 U.S.C. § 12112(a) provides that

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

---

[4]Adams asserts that his disability discrimination claims are also cognizable under § 503 of the Rehabilitation Act, 29 U.S.C. § 793, which mandates that the beneficiaries of certain government contracts "take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). Section 503, however, does not create a private right of action. Beam v. Sun Shipbuilding & Dry Dock Co., 679 F.2d 1077, 1078 (3d Cir. 1982); Fairfax v. Sch. Dist. of Phila., No. Civ.A. 03-4777, 2004 WL 887416, at *3 (E.D. Pa. Apr. 26, 2004); Miccoli v. Ray Comm'ns, Inc., No. Civ.A. 99-3825, 2000 WL 1006937, at *3 n.5 (E.D. Pa. July 20, 2000). Summary judgment will therefore be granted on plaintiff's claim under the Rehabilitation Act.

42 U.S.C. § 12112(a).[5]  To establish a prima facie case of discrimination under the

ADA, a plaintiff must show:  "(1) he is a disabled person within the meaning of the

ADA; (2) he is otherwise qualified to perform the essential functions of the job, with

or without reasonable accommodations by the employer; and (3) he has suffered an

otherwise adverse employment decision as a result of discrimination."  Benko v.

Portage Area Sch. Dist., 241 F. App'x 842, 845 (3d Cir. 2007) (quoting Taylor v.

Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

The court turns first to the question of whether Smith meets the ADA

definition of "disability."  See 42 U.S.C. § 12112(a) (creating anti-discrimination

requirements for the protection of "*individual[s] with a disability*" (emphasis

added)); 29 C.F.R. Pt. 1630 app. § 1630.10 ("The purpose of [the ADA] is to ensure

_____

[5]In late 2008, Congress amended the ADA to broaden its scope and to rescind
many of the legal standards that federal courts had previously applied to disability
claims.  See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553,
§ 2(b).  The amendments became effective on January 1, 2009.  Id. § 8.  Courts
generally "decline[] to give retroactive effect to statutes burdening private rights
unless Congress ha[s] made clear its intent" to apply the statute retrospectively.
Landgraf v. USI Film Prods., 511 U.S. 244, 265, 270 (1994); Rivers v. Roadway
Express, Inc., 511 U.S. 298, 313 (1994); In re Exxon Mobil Corp. Sec. Litig., 500 F.3d
189, 196 (3d Cir. 2007).  The amendments to the ADA contain no mandate for
retroactive application.  The court will therefore evaluate Adams's claims in light of
ADA jurisprudence as it existed at the time of the alleged discrimination.  See
Turner v. Pennsylvania, C.A. No. 07-273, 2009 WL 1858253, at *3 n.8 (W.D. Pa. June
29, 2009); see also Geoghan v. Long Island R.R., No. 06 CV 1435, 2009 WL 982451, at
*9 (E.D.N.Y. Apr. 9, 2009) (holding that the ADA Amendments Act does not apply
retroactively); Nyrop v. Indep. Sch. Dist. No. 11, No. Civ. 07-4663, 2009 WL 961372,
at *3 n.2 (D. Minn. Apr. 7, 2009) (same); Pennie v. United Parcel Serv., Inc., No. 07 C
1596, 2009 WL 855787, at *15 (N.D. Ill. Mar. 30, 2009) (same); Kravar v. Triangle
Servs., Inc., No. 1:06-cv-07858, 2009 WL 805807, at *4 n.3 (S.D.N.Y. Mar. 27, 2009)
(same).  All quotations from the ADA appearing in this memorandum reflect the
pre-amendment statutory text.

that *individuals with disabilities* are not excluded from job opportunities unless they are actually unable to do the job."); Ford v. Schering-Plough Corp., 145 F.3d 601, 605, 608 (3d Cir. 1998) (holding that a plaintiff must be disabled in order to bring suit under the ADA); see also Marinelli v. City of Erie, 216 F.3d 354, 359 (3d Cir. 2000) ("In order to state a cognizable cause of action under the ADA, a putative plaintiff must establish that he is a 'qualified individual with a disability'"); accord Bates v. United Parcel Serv., Inc., 465 F.3d 1069, 1085 n.21 (9th Cir. 2006) (stating that a plaintiff must be disabled to maintain suit under for discriminatory qualification standards).

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more . . . major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); Marinelli, 216 F.3d at 359. The plaintiff bears the burden of proving that he or she meets this definition of "disability." See Bielek v. Allegheny Ludlum Corp., No. 04-1910, 2006 WL 2773487, at *12 (W.D. Pa. Sept. 22, 2006). The United States Supreme Court has explained that the plaintiff's burden is a difficult one and that the ADA's disability definition must "be interpreted strictly to create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 197 (2002). Whether an individual is disabled within the meaning of the ADA must be evaluated on a case-by-case basis and determined only after conducting "an individualized assessment of the individual's limitations

in his or her own experience." <u>Bielek</u>, 2006 WL 2773487, at *12; <u>Marinelli</u>, 216 F.3d at 362.

In the instant case, Adams contends that the scarring in his lungs, which causes reactive airway disease, is a physical impairment that substantially limits his major life activities of breathing and working.  Alternatively, he contends that Selgrath regarded him as disabled because Selgrath mistakenly believed that surgeons had removed one of his lungs during his cancer treatment.  (Doc. 42, Ex. E at 12.)

        **1.**    <u>**Actual Disability**</u>

Major life activities are "those activities that are of central importance to daily life." <u>Toyota Motor Mfg.</u>, 534 U.S. at 197.  Such activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i);[6] <u>Spencer v. Verizon Connected Solutions, Inc.</u>, 138 F. App'x 449, 451 (3d Cir. 2005).  Adams contends that he suffers

_____

[6]The court notes that the level of deference to be afforded to the EEOC's regulations and interpretive guidelines regarding the definition of "disability" remains undecided.  <u>See</u> <u>Toyota Motor Mfg.</u>, 534 U.S. at 194-95; <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 479-80 (1999).  Because the parties to the instant action have offered no objection to the regulations' use as persuasive authority, the court will consider them accordingly.  <u>See</u> <u>George v. Genuine Parts Co.</u>, No. 04-108, 2007 WL 217684, at *8 n.3 (W.D. Pa. Jan. 25, 2007) ("Courts in this district routinely apply the EEOC's guidelines and, the Parties having offered no objection, this Court feels no need to do differently."); <u>see also</u> <u>Williams v. Phila. Hous. Auth. Police Dept.</u>, 380 F.3d 751, 762 n.7 (3d Cir. 2004) (applying the EEOC regulations because neither party to the action challenged their reasonableness).

from limitations in the major life activities of breathing and working.[7]  (Doc. 33, Ex. A at 24; Doc. 42 at 3-5.)

To prevail on his ADA claim, Adams must prove that he is substantially limited in his performance of these major life activities.  To qualify as substantial, a limitation must render an individual "unable to perform a major life activity that the average person in the general population can perform, or "significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).  The court evaluates an impairment's effect on a major life activity in light of (1) "[t]he nature and severity of the impairment," (2) [t]he duration or expected duration of the impairment," and (3) the permanent or long-term effects that are likely to result from the impairment.  Id. § 1630.2(j)(2).  In other words, a disability must be "extremely limiting" to qualify for protected status under the ADA.  Marinelli, 216 F.3d at 362.

The Third Circuit employs a two-step analysis for determining whether an individual is substantially limited in a major life activity.  See Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783-84 (3d Cir. 1998); see also Shaw v.

---

[7]Adams's brief asserts that "the cough associated with the reactive airway disease would keep him awake."  (Doc. 42 at 3.)  He cites an excerpt of Dr. Hand's deposition in support of this assertion; however, the cited deposition testimony describes symptoms that a hypothetical patient with reactive airway disease might suffer.  (See Doc. 33, Ex. B at 7-8.)  Dr. Hand never stated that Adams presented with such symptoms, nor did Adams complain of difficulty sleeping during his deposition.  Therefore, the record contains no evidence that Adams's condition substantially impaired the major life activity of sleeping.

<u>Chamberlain Mfg. Corp.</u>, No. 05-1344, 2006 WL 2382284, at *7 (M.D. Pa. Aug. 17, 2006). First, the court determines whether the individual is substantially limited in any major life activity other than working. If the individual has such a limitation, the inquiry ends. However, if the individual has no such limitation, the court's second inquiry is whether the individual is substantially limited in the major life activity of working. <u>Mondzelewski</u>, 162 F.3d at 783-84; <u>accord</u> 29 C.F.R. Pt. 1630 app. § 1630.2(j).

Given the aforementioned framework, the court will analyze whether Adams is substantially limited in the major life activity of breathing before considering the major life activity of working. Medical conditions that inhibit breathing, such as asthma or reactive airway disease, may constitute disabilities under the ADA if they severely impair an individual's respiratory capacity as compared to an average person in the general population. <u>See</u> 29 C.F.R. § 1630.2(j)(1). For example, in <u>Kaufmann v. GMAC Mortgage Corp.</u>, the plaintiff's asthma required her to "avoid exposure to perfume, dust, and smoke." <u>See</u> No. 04-CV-5671, 2006 WL 1371185, at *10 (E.D. Pa. May 17, 2006). Her condition resulted in numerous absences from work for routine treatment and emergency trips to the hospital, and the condition's permanence required the plaintiff to avoid all potential asthmatic triggers. <u>Id.</u> *10-11 Hence, the broadly limiting nature of the plaintiff's condition impaired her major life activity of breathing. <u>Id.</u> at *11.

Courts have also allowed plaintiffs to surmount summary judgment by showing that they suffer from a long-term breathing disorder that requires

14

continued vigilance to prevent debilitating attacks.  See, e.g., Khalil v. Rohm & Haas Co., No. Civ.A. 05-3396, 2008 WL 1041027, at *10 (E.D. Pa. Feb. 11, 2008) (concluding that plaintiff had proffered evidence of substantial breathing limitation because her asthma prevented her from entering urban areas and from patronizing smoky restaurants, both of which caused tightness in her chest, difficulty breathing, mucus in her lungs, and cough);  Schmidt v. Mercy Hospital of Pittsburgh, No. CA 05-1446, 2007 WL 2683826, at *2 (W.D. Pa. Sept. 7, 2007) (same with respect to plaintiff whose physician was "alarm[ed]" with her lack of airflow, who experienced continual wheezing, and who suffered at least two asthmatic episodes during the time period relevant to her case); Jackson v. Wal-Mart Stores, No. Civ.A. 05-33E, 2007 WL 1041027, at *1, 10 (W.D. Pa. Apr. 5, 2007) (same with respect to plaintiff who lost her voice and suffered infections as the result of asthma attacks, required emergency medical treatment for the condition, and easily became winded when hurrying about defendant's retail store).

In contrast, courts have granted summary judgment in favor of defendants when a plaintiff's breathing condition does not significantly interfere with major life processes.  Intermittent breathing problems or those that are well-controlled with medication generally do not constitute an impairment under the ADA. See, e.g., Amorosi v. Molino, No. Civ.A. 06-5524, 2009 WL 737338, at *5 (E.D. Pa. Mar. 19, 2009) (holding that plaintiff's breathing was not substantially limited by her mild asthmatic attacks of unspecified length that could be controlled with prescription medications).  Mild coughing or shortness of breath fail to trigger ADA

15

protections unless they are "so debilitating [that they] limit[ the] . . . ability to hold a conversation or move about freely." <u>Gallagher v. Sunrise Assisted Living of Haverford</u>, 268 F. Supp. 2d 436, 441 (E.D. Pa. 2003); <u>see also</u> <u>Claycomb v. Playtex Prods., Inc.</u>, No. Civ.A. 06-120, 2007 WL 1794150, at *4 (D. Del. June 19, 2007) (granting summary judgment in defendant's favor because plaintiff did not produce medical evidence that her breathing was impaired).

Turning to the present matter, the court concludes that Adams is not substantially limited in the major life activity of breathing. Adams testified that his breathing disorder becomes burdensome only with "extended exertion." (Doc. 33, Ex. A at 24.) He recounted no complaints of shortness of breath, wheezing, or coughing, and the condition does not prevent him from walking, speaking, or climbing a flight of stairs. He exercises several times per week and can jog continuously for a period of fifteen minutes, ride a stationary bike, play catch with his nephew, and bench press 165 pounds. His ability to complete the 1.5 mile run in fifteen minutes—while not a passing time for purposes of Police Academy graduation—likely places him in better physical condition than an average member of the general population. His condition is permanent in duration, but its long-term effects are unlikely to become more severe over time. (Doc. 33, Ex. E at 7; Doc. 42, Ex. D at 14-15.) Nothing in the record suggests that he will be unable to maintain his exercise routine for the foreseeable future, and his current physical capacity will likely continue undiminished. His extensive physical capabilities and the stable

nature of his condition demonstrate that the impairment does not substantially limit the major life activity of breathing. See 29 C.F.R. § 1630.2(j)(2).

The court will therefore evaluate the major life activity of working. An individual is substantially limited in the major life activity of working if he or she is significantly restricted in the "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Id. § 1630.2(j)(3)(i); see also Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 517 (1999). Even a complete inability to perform a single job does not warrant a finding that the plaintiff has a disability; rather, "the plaintiff must demonstrate that an entire class or range of jobs has been foreclosed." Horth v. Gen. Dynamics Land Sys., Inc., 960 F. Supp. 873, 878 (M.D. Pa. 1997) (collecting cases); see also 29 C.F.R. Pt. 1630, app. § 1630.2(j). In determining whether a plaintiff is unable to perform a class of jobs or a broad range of jobs, the court must consider the following factors: (1) "the geographical area to which the individual has reasonable access," (2) "the job from which the individual has been disqualified because of an impairment," and (3) "the number and types of jobs . . . within th[e] geographical area[] from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999) ("If jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs."); Andino v. Phila. Hous. Auth., No. 05-2161, 2007 WL 2254427, at *10 (E.D. Pa. Aug. 6, 2007). The plaintiff is not required to proffer detailed statistics about the

17

number of jobs available but must introduce evidence of "general employment demographics" or "recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." 29 C.F.R. Pt. 1630 app. § 1630.2(j); Mondzelewski, 162 F.3d at 785-86 (holding that plaintiff satisfied his summary judgment burden by introducing a report of a vocation expert, who opined that "very low employment opportunities" were available to plaintiff).

In the instant case, Adams argues that his respiratory impairment limits him in the major life activity of working because it impedes him from "complet[ing] the cadet test to become a trooper." (Doc. 42 at 4.) This analysis misses the mark. The pertinent inquiry is not whether Adams's impairment prevents him from becoming *a state police trooper* but whether it forecloses him from *a class of jobs* or a *broad range of jobs* in the relevant geographic area. 29 C.F.R. § 1630.2(j)(3)(ii). Adams has failed to satisfy this standard. The evidence of record does not address the geographical area to which Adams has access[8] or the number and types of jobs from which he is disqualified because of his impairment. In fact, the record suggests that Adams is qualified for numerous positions offered by employers near his home. Prior to entering the police academy, he worked as a security officer for Hershey Foods Corporation. (Doc. 33, Ex. A at 6.) Since leaving the academy, he has

---

[8]Adams's brief asserts that he resides in Palmyra, Pennsylvania, (Doc. 42 at 4 n.2), but the record does not describe the geographic areas to which he has access through public transportation, his personal vehicle, or other means.

interviewed for positions as a security officer with a local casino, and an air marshal with the Department of Homeland Security. (Doc. 33, Ex. A at 25-26, 32.) He also interviewed for a sales position with New York Life Insurance Company and for shift supervisor positions in manufacturing or food processing facilities operated by Kellogg's, Cargill, and Starbucks. (Id.) Regrettably, none of these companies offered him employment. However, his ability to garner the attention of numerous prospective employers—including those in the security field—indicates that his impairment disqualifies him only from serving *as a Pennsylvania State Police Trooper* rather than from a broad spectrum of jobs. 29 C.F.R. Pt. 1630 app. § 1630.2(j).

Given the state of the record, no reasonable jury could conclude that Adams's breathing disorder rendered him unable to perform a class of jobs or a broad range of jobs in various classes. See Parker v. City of Williamsport, 406 F. Supp. 2d 534, 546-47 (M.D. Pa. 2005) (holding that "no reasonable jury could find [the plaintiff] substantially impaired in the major life activity of working" absent evidence documenting the number of jobs from which plaintiff is disqualified); Hodson v. Alpine Manor, Inc., No. 03-374, 2007 WL 1491410, at *14 (W.D. Pa. May 21, 2007) (same); Merit v. Se. Pa. Transit Auth., 315 F. Supp. 2d 689, 700-01 (E.D. Pa. 2004) (same), aff'd, 122 F. App'x 598 (3d Cir. 2005); Lukens v. Nat'l R.R. Passenger Corp., No. 99-4102, 2000 WL 1622745, at *5 (E.D. Pa. Oct. 25, 2000) (same); Dutcher, 53 F.3d at 727 n.13 (same); see also Aurigue, 45 F. App'x at 695 (holding that plaintiff's "conclusory allegations" regarding her inability to work were insufficient, absent

19

evidence concerning job market demographics).  Adams has failed to proffer

sufficient evidence that his reactive airway disease constitutes a disability as

defined by the ADA.  Accordingly, he is unable to establish that he is disabled by

virtue of a physical impairment that substantially limits a major life activity.

## 2. Record of Impairment

Defendants contend that Adams does not have a record of impairment

sufficient to render him disabled under the ADA.  (Doc. 39 at 11-12.)  Adams's brief

in opposition does not respond to this argument and addresses only whether he is

actually disabled or whether defendants regarded him as disabled.  (Doc. 42 at 2-5.)

He has therefore waived any claim that he is disabled based upon a record of

impairment.  See Player v. Motiva Enters. LLC, 240 F. App'x 513, 522 n.4 (3d Cir.

2007) (stating that plaintiff's failure to identify evidence that controverts an issue

raised by defendants operates as a waiver of the issue); Seals v. City of Lancaster,

553 F. Supp. 2d 427, 432-33 (E.D. Pa. 2008) (holding that plaintiffs' failure to oppose

a claim raised in defendant's summary judgment motion operates as a waiver of the

claim); GNC Franchising LLC v. Khan, No. Civ.A 05-1341, 2008 WL 612749, at *8-9

(W.D. Pa. Mar. 3, 2008) (same).

Notwithstanding this waiver, the evidence of record fails to support a claim

that Adams is disabled based upon a record of impairment.  Record-of-impairment

claims protect individuals who suffer discriminatory action based upon a

documented history of a disability, Eshelman v. Agere Sys., Inc., 554 F.3d 426, 436-

37 (3d Cir. 2009), and a plaintiff relying upon a record of impairment must establish

a history of a condition that substantially limits a major life activity, id. at 437; Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001). The plaintiff must also demonstrate that the employer "relied upon [his or] her record of impairment in making its employment decision." Eshelman, 554 F.3d at 437; Dawley v. Erie Indem. Co., 100 F. App'x 877, 883 (3d Cir. 2004) (citing 29 C.F.R. Pt. 1630 app. § 1630.2(k)). Merely showing that the employer knew of the impairment is insufficient to establish discrimination based upon a record of impairment.

Adams may not predicate a discrimination claim upon his past history of cancer treatment and reactive airway disease because the short duration of his treatment and the relatively minor effects thereof do not substantially limit a major life activity. Adams was diagnosed with the tumor on December 7, 1990, and underwent immediate surgery. (Doc. 33, Ex. A at 13.) Radiation and chemotherapy treatments followed, and physicians eradicated the tumor by mid-March of 1991, after approximately fifteen weeks. (Id.; see also Doc. 33, Ex. F at 17.) The long-term effects of Adams's cancer treatments are also mild. His reactive airway disorder is the only long-term consequence of the treatment, and this condition has not inhibited any of his major life activities. See supra Part III.A.1. Hence, the court concludes Adams's short-lived record of cancer treatments, coupled with the mild long-term effects thereof, fail to establish a record of impairment that substantially limits a major life activity. See Toyota Motor Mfg., 534 U.S. at 196; Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (concluding that an impairment of seven months did not qualify as a disability because it was

accompanied by few residual effects); <u>Sanders v. Arneson Prods., Inc.</u>, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that an impairment requiring hospitalization for sixteen weeks with no long-term effects did not qualify as a disability under the ADA because of its temporary nature); <u>accord</u> <u>Baffoe v. W.H. Steward Co</u>, No. 99-6199, 2000 WL 484878, at *4-5 (10th Cir. 2000) (same with respect to impairment lasting three months).

Further, Adams has proffered no evidence that defendants relied upon his medical history when making any employment decision. Defendants apparently concluded that Adams had fully recovered from his bout with cancer. They discharged him from the Police Academy based upon his performance on the physical fitness exam, and the record contains no indication that his medical history played any role in this decision. Adams cannot claim to be disabled by virtue of a record of impairment absent such evidence.

### 3. <u>Regarded as Disabled</u>

To establish that he was "regarded as" disabled, Adams must show that he "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the [defendant] as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no such impairment but is treated by a [defendant] as having a substantially limiting impairment." <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 381 (3d Cir. 2002). In making this determination, the court must focus on "the reactions and perceptions

of the persons interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996); Howell, 959 F. Supp. at 268 (citing 29 C.F.R. § 1630.2(*l*)(1)). Hence, an employer does not regard an employee as disabled unless the employer believes that the individual is substantially limited in the performance of a major life activity. Sever v. Henderson, 381 F. Supp. 2d 405, 416 n.5 (M.D. Pa. 2005).

In the case *sub judice*, Adams contends that defendants regarded him as disabled because Dr. Hand diagnosed him with reactive airway disorder and because Selgrath mistakenly believed that one of his lungs had been removed. However, none of the defendants believed that Adams's condition substantially impaired a major life activity. To the contrary, Dr. Hand testified that Adams's condition was not chronic, (Doc. 33, Ex. A at 13), that he frequently encountered cadets with similar symptoms, (id. at 7), and that conditions such as reactive airway disorder usually respond well to pharmacological treatment, (id. at 15-17).

Selgrath held inaccurate conclusions about Adams's medical history; however, Adams has adduced no evidence evincing a belief by Selgrath that this impairment substantially limited his physical capabilities. There is no evidence that Selgrath concluded that Adams was unable to perform major life activities, that he relied upon that erroneous belief when making employment decisions, or that he treated Adams differently because of such beliefs. Adams has merely established that defendants knew that his medical history included a prior battle with cancer and that Selgrath was mistaken about the manner in which he was

23

treated. No reasonable jury could conclude that defendants regarded him as disabled based solely upon this information. Sever, 381 F. Supp. 2d at 416 n.5 (holding that defendants' mere awareness of an impairment is insufficient to establish that they regarded plaintiff as disabled absent evidence that they believed plaintiff to be substantially limited in a major life activity); see also 29 C.F.R. Pt. 1630 app. § 1630.2(*l*); Kelly, 94 F.3d at 108-09.

Adams has not established that he is disabled within the meaning of the ADA and has therefore failed to establish a prima facie case under § 102(a). Defendants' summary judgment motion will be granted with respect to his disability claims.[9]

---

[9] Adams also raises a tenuous disparate impact argument, asserting that PSP's physical fitness examination unnecessarily precludes individuals with disabilities from serving as state troopers. Specifically, Adams contends that the 1.5 mile run requirement imposes a discriminatory precondition upon employment. Section 12112(b)(6) of the ADA prohibits the use of "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6). In order to make out a prima facie case of disparate impact, Adams must demonstrate that "application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern." Lanning v. Se. Pa. Transp. Auth., 181 F.3d 478, 485 (3d Cir. 1999) (Title VII); see also New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 301 n.6 (3d Cir. 2007) (explaining that "allocations of burdens of proof and persuasion under the ADA" are governed by analogous Title VII case law); Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156-57 & n.3 (3d Cir. 1995) (same). Adams offers no evidence to suggest PSP's test has resulted in a discriminatory hiring pattern; he offers no data, statistical evidence, or testimony to suggest that individuals with disabilities are unlawfully precluded from consideration. In contrast, defendants offer expert testimony, scientific reports, and supportive physiological data to justify the time within which applicants must complete the 1.5 mile run. (See Doc. 39 15-20.) Thus, even if Adams had made a prima facie showing, defendants have offered sufficient evidence that the 1.5 mile run requirement is "job-related for the position in

## B.    Gender Discrimination

Adams alleges that defendants discriminated against him on the basis of gender during administration of the physical fitness exam.[10]  To withstand a motion for summary judgment on a disparate treatment claim, a plaintiff must establish that his or her "protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." Ulitchney v. Potter, No. 3:04CV991, 2006 WL 1722391, at *2 (M.D. Pa. 2006) (quoting Monaco v. Amer. Gen. Assurance. Co., 359 F.3d 296, 300 (3d Cir. 2004)).  A plaintiff may meet this burden with either direct evidence, see Price Waterhouse v. Hopkins, 490 U.S. 288 (1989) (O'Connor, J., concurring), or circumstantial evidence, see

---

question and is consistent with business necessity."  See § 12112(b)(6).  Given the paucity of disparate impact evidence proffered by Adams, additional inquiry is unnecessary and summary judgment is appropriate.

[10]Gender discrimination is proscribed by Title VII, which provides, in pertinent part, as follows:

It shall be an unlawful employment practice for an employer --

(1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin; or

(2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, *sex*, or national origin.

42 U.S.C. § 2000-e(2) (emphasis added).

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). In the instant case,

Adams has not provided direct evidence of discrimination;[11] therefore, the court will

examine his claims using the three step burden-shifting analysis set forth in

<u>McDonnell Douglas</u>.

Under <u>McDonnell Douglas</u>, a plaintiff must first establish a prima facie case

of discrimination by proving the following elements: (1) the plaintiff is a member of

a protected class,[12] (2) the plaintiff was qualified for the position he held or sought,

(3) the plaintiff suffered an adverse employment action, and (4) the circumstances of

the adverse employment action give rise to an inference of discrimination. <u>Johnson</u>

<u>v. Keebler-Sunshine Biscuits, Inc.</u>, 214 F. App'x 239, 241 (3d Cir. 2007) (citing <u>Jones</u>

<u>v. School Dist. of Phila.</u>, 198 F.3d 403, 410-11 (3d Cir. 1999)); <u>Connors v. Chrysler</u>

<u>Fin. Corp.</u>, 160 F.3d 971, 974 (3d Cir. 1998). Once the prima facie case is established,

the burden shifts to the defendant to articulate some "legitimate, nondiscriminatory

reason" for the plaintiff's treatment. <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d

---

[11]Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 930 (3d. Cir. 1997). An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d Cir. 1999). Therefore, a plaintiff who wishes to establish a *prima facie* case of discrimination using direct evidence "faces a high hurdle." <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998). The court has found no evidence of record to suggest that Adams has cleared this hurdle in the instant action.

[12]The protected class element has been extended to reach cases of "reverse discrimination," wherein a member of a majority group alleges that he or she was discriminated against in favor of a member of a minority group. <u>Iadimarco</u>, 190 F.3d at 158. Adams's claim of gender discrimination falls into this category.

Cir. 1999) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>Keller v. Orix Credit Alliance,</u>

<u>Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997). The defendant's burden to prove a

legitimate non-discriminatory reason is "relatively light." <u>Johnson</u>, 2007 WL

215801, at *3. The defendant is only required to prove that its actions could have

been motivated by the proffered legitimate, nondiscriminatory reason; proof of

actual causation is not required. <u>Iadimarco</u>, 190 F.3d at 157. Once the defendant

has met its burden, the plaintiff must "prove by a preponderance of the evidence

that the legitimate reasons offered by the defendant are merely a pretext for

discrimination." <u>Johnson</u>, 2007 WL 215801, at *2. The plaintiff may meet this

burden by presenting evidence from which a reasonable factfinder could "either

(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

invidious discriminatory reason was more likely than not a motivating or

determinative cause of the employer's action." <u>Keller</u>, 130 F.3d at 1108.

Turning to the *prima facie* case, Adams contends that defendants

discriminated against him on the basis of gender by discharging him from the

Police Academy while allowing Rarrick to graduate. A single instance of

differential treatment may satisfy a plaintiff's prima facie burden if it is sufficiently

weighty to create an inference of discrimination, <u>see</u> <u>Simpson v. Kay Jewelers, Div.</u>

<u>of Sterling, Inc.</u>, 142 F.3d 639, 646 (3d Cir. 1998); however, defendants' treatment of

Rarrick fails to do so under the circumstances of this case.

Defendants allowed Rarrick to graduate under circumstances that made it

unclear whether she had successfully completed the vertical jump. This is

markedly different from Adams's performance on the 1.5 mile run, which exceeded

a passing time by more than sixty seconds. At most, this demonstrates that, when

confronted with a close call in Rarrick's case, defendants resolved the situation in

her favor. The lack of similarity between Adams's and Rarrick's performance fails

to establish a prima facie case of differential treatment absent corroborative

evidence of discriminatory animus. See Pivirotto v. Innovative Sys., Inc., 191 F.3d

344, 359 (3d Cir. 1999) ("[E]vidence of differential treatment of 'a single member of

[a] non-protected class is insufficient to give rise to an inference of discrimination.'"

(quoting Simpson, 142 F.3d at 646));[13] Zahavi v. The PNC Fin. Servs. Group, No.

---

[13]Simpson, which addressed the pretext phase of discrimination cases, noted that an inference of discrimination based upon a single instance of differential treatment "*may* be accepted at the prima facie stage of the analysis." 142 F.3d at 646. However, even at the prima facie stage, "there still must be evidence from which to infer discrimination *apart from the fact that some members of one group are sometimes treated better* and sometimes treated worse than members of another group." Id. Hence, a plaintiff may not surmount the prima facie hurdle merely by identifying one instance of differential treatment if that occurrence does not support an inference of discrimination.

Pivirotto confirms that the prima facie case turns not upon a rote showing that an individual outside of the protected class received better treatment, but rather upon evidence establishing an inference of discriminatory animus. In Pivirotto, the United States Court of Appeals for the Third Circuit reviewed a district court's jury instructions on the elements of the plaintiff's prima facie case. The court held that the plaintiff's

> evidence of the allegedly better treatment of male employees [was] weak and not probative of discrimination. Even if the jury were instructed properly *on the prima facie case*, we find it highly probable that "the jury would have reached the same result" on the basis of this evidence. . . . While there was some minimal testimony regarding [the] alleged failings [of a coworker outside of the plaintiff's protected class], there was no evidence that [individuals within the protected class] were treated less favorably than [those outside the class]. Further,

Civ.A. 07-376, 2009 WL 904699, at *12 (W.D. Pa. Mar. 31, 2009) (quoting same); Hose

v. Buca Rests., Inc., No. Civ.A. 07-242, 2008 WL 4000403, at *7 (W.D. Pa. Aug. 25,

2008) (quoting same).

Adams has produced no evidence of gender discrimination in this case.  He

has not demonstrated that defendants made gender-based derogatory remarks

about male cadets, executed employment decisions on the basis of gender, or

subjected male cadets to gender-based harassment.  The record contains no

indication that defendants routinely favored female cadets or systematically

afforded them more opportunities to pass the physical fitness exam.  In fact, Adams

testified that he was aware of no other female cadet (other than Rarrick) who

---

*evidence of differential treatment of "a single member of the*
*non-protected class is insufficient to give rise to an inference of*
*discrimination."* Simpson, 142 F.3d at 646.

Pivirotto, 191 F.3d at 359.  Pivirotto reflects the well-established principle that a
plaintiff's prima facie burden is not rigidly formulaic and must be adapted to the
circumstances of a particular case.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512
(2002) (repeating that "the precise requirements of a prima facie case vary
depending on the context and were never intended to be rigid, mechanized, or
ritualistic" (internal quotation and citation omitted)).  Certainly, there will be cases
in which a single instance of differential treatment may give rise to an inference of
discrimination.  This, however, is not such a case.  Nothing in the record suggests
that defendants discharged Adams from the Police Academy because he is a male,
and his gender discrimination claim fails as a result.

purportedly failed the physical fitness exam but was nevertheless permitted to graduate.[14] (Doc. 33, Ex. A at 22.)

These circumstances do not support an inference of employment discrimination, and Adams has failed to establish a prima facie case of gender discrimination. Defendants' motion for summary judgment will be granted with respect to the Title VII claim.[15]

---

[14]Adams testified as follows:

Q. Do you know any other women who were not permitted to—who did not meet the standards but were still passed?

A. No.

(Doc. 33, Ex. A at 22.)

[15]Assuming, *arguendo*, that Adams had established a prima facie case of discrimination, his claim would nevertheless fail for lack of evidence of pretext. Defendants have produced sufficient evidence that Adams was terminated for the legitimate non-discriminatory reason that he could not perform the 1.5 mile run within the allotted time. (See Doc. 33, Ex. G at 11; Doc. 34 ¶ 12; Doc. 42-2 ¶ 12.) Adams argues that these proffered reasons are pretextual because defendants permitted Rarrick to graduate while discharging him from the Police Academy. (Doc. 42 at 11-12.) Proving pretext places a "difficult burden" on the plaintiff. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 386 (3d Cir. 1999). The plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1009. As discussed above, the circumstances under which defendants allowed Rarrick to graduate fail to demonstrate that they acted with discriminatory intent when they discharged plaintiffs. Based upon Rarrick's performance on the physical fitness exam, it was unclear whether she had attained the requisite height in the vertical jump. Defendants resolved this ambiguous situation in Rarrick's favor. Unlike Rarrick, it is beyond peradventure that Adams did not complete the 1.5 mile run in the required time. The record contains no evidence that defendant handled these strikingly different situations in a disparate manner based upon the gender of the cadets involved. After evaluating Adams's proffered evidence of discrimination, no reasonable jury could conclude that defendants' asserted reasons for discharging him were pretextual. His failure to establish pretext provides an appropriate alternative ground for disposition of the motion for summary judgment.

**IV.** **Conclusion**

Plaintiff has failed to establish a prima facie case of either disability or gender discrimination. His lack of a disability under the ADA likewise vitiates his claims for failure to accommodate and for discriminatory testing. Defendants' motion for summary judgment will therefore be granted.[16]

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:    August 25, 2009

---

[16]It is unclear what role, if any, defendants Colonel Jeffrey Miller, Linda Bonney, and Timothy Shannon played in the alleged disability and gender discrimination claims. Bonney is PSP's director of human resources, (Doc. 33, Ex. F ¶ 1), but allegations against her appear nowhere in Adams's moving papers. Miller and Shannon are also absent from Adams's filings. In light of this lack of discussion with respect to these defendants, summary judgment will be granted in their favor.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH B. ADAMS,** | : | **CIVIL ACTION NO. 1:06-CV-2154** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| **COL. JEFFREY MILLER,** | : | |
| **LINDA BONNEY, MJR. ENSEL,** | : | |
| **LT. SELGRAPH, SGT. SHANON, and** | : | |
| **CPL. CHARLES MOREY,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 25th day of August, 2009, upon consideration of

defendants' motion for summary judgment (Doc. 33), and for the reasons set forth in

the accompanying memorandum, it is hereby ORDERED that:

1.  The defendants' motion for summary judgment (Doc. 33) is GRANTED.

2.  The Clerk of Court is directed to enter JUDGMENT against plaintiff
    and in favor of defendants on all claims.

3.  The Clerk of Court is directed to CLOSE this case.



   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge